MANION, Circuit Judge.
Michael O’Rourke had a large outstanding balance on his credit card. Over the years, the unpaid debt was sold to several debt collectors and finally to Palisades Acquisition XVI. It sought but failed to collect on the debt and eventually sued O’Rourke in state court. Attached to the complaint was an exhibit that closely resembled a credit card statement listing the balance he owed and placing Palisades in the place of the issuer. O’Rourke sued in federal court claiming that the attachment violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 (“the Act”). Unlike most lawsuits under the Act, he claimed that the attachment was actionable because it was meant to mislead the state court judge. The district court granted summary judgment for Palisades and O’Rourke appeals. The Act regulates communications directed at the consumer; since it does not extend to communications that are allegedly meant to mislead the judge in a state court action, we affirm.
I.
In 2001, O’Rourke owed several thousand dollars on his Citibank credit card but, for reasons unknown, he never paid the bill. Over time, he mistakenly assumed that the debt was barred by the statute of limitations. Then one day he received a collection notice from a law firm representing the debt’s new owner, Palisades. He ignored it. Several months later, he received a summons and complaint with some exhibits attached. One of the exhibits was a statement that looked like a credit card bill, complete with a statement closing date several months before the complaint was filed, and it listed Palisades as the issuing. Despite looking authentic, it was not an actual copy of a credit card statement. And Palisades admits that it never sent the statement to O’Rourke before filing the suit.
O’Rourke eventually hired a lawyer, and on the day of trial, Palisades voluntarily dismissed the case. After Palisades dismissed its suit, O’Rourke sued it in federal court claiming that the exhibit violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692. Unlike most cases filed under the Act, O’Rourke doesn’t claim that the statement was materially deceptive to him or to the unsophisticated consumer. Instead, he claims that the statement is materially false, deceptive, and misleading to a state court judge, specifically one who is viewing it in the context of granting a default judgment.
O’Rourke frames his argument around the overburdened court system in Cook County, Illinois, the problems inherent in the debt collection business, and Palisades’s chicanery. He claims that in Cook County — where Palisades filed its complaint — there are over 100,000 contract-claim cases filed every year, where parties sue over bad debts. This massive volume of cases is divided between seven full-time judges, giving each over 14,000 of these cases a year, with most of them being resolved by default judgments. A judgment, of course, changes the nature of the obligation; the debt collector can now create a judgment lien on real estate, and enable other collection methods, including garnishing the debtor’s wages.
*940 Debt collectors who work on very thin profit margins rely on these default judgments for two reasons. The first is that it is too expensive to actually litigate the case, especially when the debt is relatively small and previous collection efforts have failed. So, when a party actually defends against the suit, the debt collector simply dismisses the suit — Palisades did precisely this with O’Rourke. The second reason is that they cannot always establish the debt. Like the current mortgage problem that dominates the headlines, these debts are packaged from the original owner and sold to debt collectors in a portfolio; if the portfolio is large enough, sometimes it’s split among several debt collectors. And sometimes, the debt is packaged again and sold to a second or third debt collector— Palisades was the fourth successive assignee of O’Rourke’s debt. This poses difficulties for everyone. The packaging and repackaging of the debt can keep the debt collector from ever being able to verify the original debt. It can also affect the debt- or: as in this case, the same debt is sold to multiple parties with each attempting to collect on it, sometimes at the same time. Thus, with the costs of litigation and the difficulties establishing the debt, when a debt collector cannot get payment through phone calls and letters and it has to go to court, the debt collector will often rely on default judgments as the last resort.
In most cases when a defendant fails to appear and answer the allegations in a properly pleaded complaint, those allegations are deemed admitted and default judgment is entered for the plaintiff. But the Illinois Rules of Civil Procedure also provide that even in the event the defendant fails to appear and plead, “the court may in either case, require proof of the allegations of the pleadings upon which relief is sought.” 735 ILCS 5/2 — 1301(d). Although it is unclear how often courts exercise their discretion and require proof of the allegations in the complaint, it does happen. E.g., Universal Cas. Co. v. Lopez, 376 Ill.App.3d 459, 315 Ill.Dec. 273, 876 N.E.2d 273, 278 (2007); Colonial Penn Ins. Co. v. Tachibana, 53 Ill.App.3d 981, 11 Ill.Dec. 723, 369 N.E.2d 177, 179 (1977).
Naturally, with the difficulties outlined above, debt collectors want to avoid having to prove their damages to the court, so they attempt to fully establish all the facts with the complaint and the exhibits. In Illinois, one way that a plaintiff can establish a debt is through the account-stated theory or method. Under that method, when a party receives a bill or account statement and does not object to it within a reasonable time, the bill or statement serves as evidence of both an agreement to pay and the account’s accuracy. Delta Consulting Grp., Inc. v. R. Randle Constr., Inc., 554 F.3d 1133, 1138 (7th Cir.2009) (citing W.E. Erickson, Constr., Inc. v. Congress-Kenilworth Corp., 132 Ill.App.3d 260, 87 Ill.Dec. 536, 477 N.E.2d 513, 520 (1985)).
With this understanding, the statement attached to the complaint in this case takes on an added significance. It explains why the statement would be dated for six months before the complaint was filed and why it was, in fact, never sent to O’Rourke: Palisades apparently wanted to give the judge the impression that O’Rourke had received the statement and never objected. Thus, a judge who examines the complaint and the attached statement trusting it to be authentic would believe that there is no reason to exercise his discretion and require additional proof of the debt.
While this reflects negatively on Palisades’s debt-collection practices, the question is not whether this dubious method is an acceptable means of practicing law. Nor is the question whether the attached *941 statement would have misled the unsophisticated consumer. Rather, the question O’Rourke presents is whether this statement, which O’Rourke alleges was meant to deceive the state court judge, is actionable under the Act. No other question was raised on appeal and no cross-appeal was filed, so we are limiting our analysis to what the parties have argued.[1]
II.
We review de novo the district court’s granting of summary judgment. Ruth v. Triumph P’ships, 577 F.3d 790, 795 (7th Cir.2009). And we may affirm on any ground that appears in the record. Bivens v. Trent, 591 F.3d 555, 559 (7th Cir.2010).
On appeal, O’Rourke continues to claim that the exhibit is materially false and would mislead the Cook County judge handling his case; thus, it violates § 1692e. That section is broadly written and prohibits the use of “any false, deceptive, or misleading representation^] or means in connection with the collection of any debt.” 15 U.S.C. § 1692e. It then has a non-exhaustive list of conduct that violates the Act. O’Rourke specifically alleges that the misleading credit card statement violates § 1692e(2)(A) and (10). The first subsection prohibits the false representation of “the character, amount, or legal status of any debt.” The second prohibits “[t]he use of any false representation or deceptive means to collect or attempt to collect any debt.” Nothing in those subsections or in § 1692e states that the Act applies to statements made to judges, but at the same time, the Act’s language is not specifically limited to statements directed at consumers.
Yet when read in light of the Act’s purpose and numerous provisions, the prohibitions are clearly limited to communications directed to the consumer and do not apply to state judges. The Act is meant “to protect consumers against debt collection abuses.” 15 U.S.C. § 1692(e). To accomplish this purpose, § 1692e broadly prohibits a debt collector from using “any false, deceptive, or misleading representation or means in connection with the collection of any debt.” Id. § 1692e. Many of the specific instances of conduct that violate this Section are protections for consumers. They keep consumers from being intimidated or tricked by debt collectors.[2] With this focus on the consumer, we have noted that “[t]he purpose of the Fair Debt *942 Collection Practices Act is to protect consumers.” Muha v. Encore Receivable Mgmt., Inc., 558 F.3d 623, 627 (7th Cir.2009). And its provisions revolve around its purpose: “The statute is designed to provide information that helps consumers to choose intelligently.” Hahn v. Triumph P’ships LLC, 557 F.3d 755, 757 (7th Cir.2009). Naturally we have used that understanding of the Act to interpret § 1692e, holding that to be actionable a misleading statement must have the ability to influence a consumer’s decision. Hahn, 557 F.3d at 758 (“A statement cannot mislead unless it is material, so a false but non-material statement is not actionable.”); accord Miller v. Javitch, Block & Rathbone, 561 F.3d 588, 596 (6th Cir.2009).
Our cases focus on the consumer, and we have rejected attempts to stretch the Act beyond its text and purpose. See Tinsley v. Integrity Financial Partners, Inc., 634 F.3d 416 (7th Cir.2011). In Tinsley, when the debtor was contacted about a debt, he found an attorney, who wrote a letter to the debt collector stating that Tinsley had no assets and asking that all future communications be sent to the attorney. The debt collector complied and sent the next letter to the attorney. Tinsley then sued. His argument was premised on the fact that the Act prevents any further communication once a “consumer” maintains that he refuses to pay the debt. 15 U.S.C. § 1692c(c). Tinsley argued that the additional communications sent to his attorney — at his direction — violated the Act. He claimed that under the Act his attorney should be treated the same as a consumer. In rejecting this argument, we held that such an interplay between the subsections of the Act rendered it “gibberish,” and called it an “implausible understanding” of the Act. Id. at 418-19. Unequivocally we held that under § 1692c, a lawyer representing a debtor is not a consumer.
Coming back to the question on appeal of whether the Act covers false statements made to judges, we turn to the Act’s language. Section 1692e states: “A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.” The text says nothing of to whom the representation has to be made for it to be actionable. Although the section’s language has no specific limits, it cannot be so open-ended as to include, for example, a misleading letter sent to the wrong address. See David v. FMS Services, 475 F.Supp.2d 447, 448 (S.D.N.Y.2007). There must be a limiting principle.
The concurrence disagrees. First, it believes we should resolve this case with reference to the unsophisticated consumer standard, because at least in the district court below O’Rourke claimed that Palisades intended to deceive and mislead the court and the debtor; thus, even if the document wasn’t created with him in mind, he was an indirect recipient. Post at 948-49. Second, it believes that communications meant to deceive judges fall under the Act, because § 1692e does not exclude any “class of persons” from the Act’s protection. Id. at 948. The concurrence reasons that state courts are a “medium through which debt collection information is conveyed to consumers,” id. at 949, and since state court judges can play “an extremely consequential role in the debt collection process,” filings meant to deceive the judge should also be covered under the Act. Id. But even under the concurrence’s position there would be classes of persons excluded from the Act’s protections. Instead of focusing on the “consumer,” courts would have to determine whether the person plays an inconsequential, a consequential, or “an extremely consequential role” in the process.
*943 And that is unnecessary. The Act does not extend its protection beyond the consumer; there is no reference to anyone else in the process who may have a consequential, let alone extremely consequential role in the debt-collection process. Instead of relying on the concurrence’s reasoning, the Act’s purpose and focus provide a clear limiting principle. See Norman J. Singer, 2B Sutherland Statutory Construction, § 54:5 (7th ed. 2008); Gomez v. United States, 490 U.S. 858, 864, 109 S.Ct. 2237, 104 L.Ed.2d 923 (1989) (noting the Act should be read in light of its purpose). The Act is meant to protect consumers. Muha, 558 F.3d at 627. A consumer is “any natural person obligated or allegedly obligated to pay any debt.” 15 U.S.C. § 1692a(3). The definition applies to every subsection of the Act.
As a general matter, the Act and its protections do not extend to third parties. Although courts have extended the Act’s prohibitions to some statements made to a consumer’s attorney, Evory v. RJM Acquisitions Funding L.L.C., 505 F.3d 769, 773-75 (7th Cir.2007), and to others who can be said to stand in the consumer’s shoes, Wright v. Fin. Serv. of Norwalk, Inc., 22 F.3d 647, 650 (6th Cir.1994) (en banc) (holding that executrix could sue because the Act applies to anyone who “stand[s] in the shoes of the debt- or [with] the same authority as the debtor to open and read the letters of the debt- or”), none has extended the Act to persons who do not have a special relationship with the consumer. In fact, the Eighth Circuit rejected an argument that the Act applied to representations that were not directed to the consumer: “The weight of authority applying section 1692e does so in the context of a debt collector making a false, deceptive, or misleading representation to the plaintiff.” Volden v. Innovative Financial Systems, Inc., 440 F.3d 947, 954 (8th Cir.2006) (emphasis in the original) (the false statements ,at issue were not made to the consumer but between a check guarantee company and a returned-check processor). Thus, the Act is limited to protecting consumers and those who have a special relationship with the consumer— such that the Act is still protecting the consumer — from statements that would mislead these consumers. The Act is not similarly interested in protecting third parties. Id.; see also Guerrero v. RJM Acquisitions, LLC, 499 F.3d 926, 934 (9th Cir.2007) (noting “Congress did not view attorneys as susceptible to the abuses that spurred the need for the legislation”).
By drawing the line at communications directed at consumers — “any natural person obligated or allegedly obligated to pay any debt” — and those who stand in then-shoes, the Act fits its purpose: protecting consumers. This gives consumers the full breadth of protection that the Act permits and keeps us from reading into the Act whatever implausible ends O’Rourke’s lawyers can conjure up. This also avoids the arbitrary “class designation” of whether the third party has “an extremely consequential role in the debt collection process.” And it keeps us safe from the practical difficulty of parsing claims about whether a communication directed at a third party is actionable.[3] Thus, we read *944 the Act’s protections as extending to consumers and those who stand in the consumer’s shoes and no others.
The question then becomes whether judges stand in the shoes of the consumer, such that the Act’s protections should be read to extend to them. Judges do not have a special relationship with consumers. They stand as impartial decision-makers in the discharge of their office. 28 U.S.C. § 453; 705 ILCS 35/2. They are neither a consumer’s advocate nor his adversary; their role is to ensure that the process is followed. They have no special relationship with the consumer; thus, the Act’s protections do not extend to communications that could mislead them.
III.
Because nothing in the Act’s text extends its protections to anyone but consumers and those who have a special relationship with the consumer, we hold that the Fair Debt Collection Practices Act does not extend to communications that would confuse or mislead a state court judge. Accordingly, the judgment of the district court is Affirmed.

. Nothing in the opinion states or should be read to address whether the Act applies to the entire judicial process. That question was left open in Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLC, 480 F.3d 470, 473 (7th Cir.2007), where we observed, without holding, that the Act's protections may not stretch into formal legal pleadings. Id. at 473. This case does not force us to revisit the question and answer whether it does. Instead, this opinion addresses the question presented: whether the Act covers filings that are meant to deceive a state court judge.

. E.g., 15 U.S.C. § 1692e(2); id. § 1692e(4); id. § 1692e(5); id. § 1692e(10) (using "false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer”); id. § 1692e(ll) (prohibiting debt collectors from failing to “disclose in the initial written communication with the consumer ... that the debt collector is attempting to collect a debt”); see also Kropelnicki v. Siegel, 290 F.3d 118, 127 (2d Cir.2002) (noting "[t]he FDCPA establishes certain rights for consumers whose debts are placed in the hands of professional debt collectors for collection, and requires that such debt collectors advise the consumers whose debts they seek to collect of specified rights.” (quotation omitted) (emphasis added)); Christian Stueben, Judge or Jury? Determining Deception or Misrepresentation Under Fair Debt Collection Practices Act, 78 Ford-ham L. Rev. 3107, 3112-14 (2010) (outlining how the purpose of the Act is to protect consumers).

. For example, if we accept O'Rourke's argument, we would stretch an Act that is meant to protect the "unsophisticated consumer” and place its protections on a judge, a judge who has been to law school, who is likely an accomplished attorney before ascending to the bench, and who is presumed knowledgeable of the law due to his position on the bench — in other words, a sophisticated individual. And just as we have crafted standards for the "unsophisticated consumer” and the “competent lawyer,” Evory, 505 F.3d at 773- *944 75, we would then have to craft a test for whether a communication would confuse or mislead the sophisticated judge, and so on with each group of persons involved in the debt-collection process. The practical futility of judging such claims reinforces the holding of this case: The Act does not extend its protections to third parties who do not stand in the shoes of the consumer.