Gail WASHINGTON and Troy
Merrill, Plaintiffs,

v.

ROOSEN, VARCHETTI & OLIVER, PPLC, Web Equity Holdings, LLC, and Main Street Acquisitions Corp., Defendants.

No. 1:11–cv–945.

United States District Court,
W.D. Michigan,
Southern Division.

Sept. 17, 2012.

Michael O. Nelson, Grand Rapids, MI, for Plaintiffs.

Kathleen H. Klaus, Maddin Hauser Wartell Roth & Heller PC, Southfield, MI, Jeffrey Steven Hengeveld, Plunkett Cooney, Bloomfield Hills, MI, Randall J. Groendyk, Varnum Riddering Schmidt & Howlett LLP, Grand Rapids, MI, for Defendants.

*OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT WEB EQUITY'S MOTION TO DISMISS and OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT ROOSEN, VARCHETTI, & OLIVER'S MOTION TO DISMISS*

PAUL L. MALONEY, Chief Judge.

This matter comes before the Court on two motions to dismiss. (ECF Nos. 5 and 6.) Defendant Web Equity ("Web Equity") filed the first motion to dismiss, along with a supporting brief. (ECF No. 5.) Defendant Roosen, Varchetti & Oliver ("Roosen") filed the second motion to dismiss,

along with a supporting brief. (ECF No. 6.) Defendant Main Street Acquisitions ("Main Street") has not filed any motion. Plaintiffs Gail Washington and Troy Merrill (collectively "Plaintiffs") filed a collective response to the two motions. (ECF No. 7.) Defendant Roosen filed a reply in support of its motion. (ECF No. 10.) Defendant Web Acquisitions did not file a reply brief. A hearing on the two motions was held on August 18, 2012.

Gail Washington ("Washington") and Troy Merrill ("Merrill") filed a class-action lawsuit against Web Equity, Roosen, and Main Street (collectively "Defendants"). Plaintiffs allege that Defendants routinely file debt-collection actions in Michigan state courts. Plaintiffs allege that, as part of the state-court debt-collection actions, Defendants fraudulently accused the debtors of fraud. Plaintiffs allege that Defendants' accusations were made without any factual basis. Plaintiffs assert three counts: (1) violations of the Fair Debt Collection Practices Act ("FDCPA"), (2) violations of the Michigan Collection Practices Act ("MCPA"), and (3) violations of the Michigan Occupational Code ("MOC"). In short, Defendants are being sued for falsely accusing Plaintiffs of making false statements.

## THE COMPLAINT [1]

Plaintiffs allege, on September 7, 2010, Roosen, on behalf of Web Equity, filed suit against Washington in the 59th District Court in Grandville, Michigan. (Compl. ¶ 11.) As the fifth cause of action in that state lawsuit, Web Equity stated that Washington knowingly and intentionally made false statements as part of her application for a credit card.[2] (*Id.* ¶ 13.) Web

---

**1.** Here, the "complaint" refers to the complaint filed in federal court by Gail Washington and Troy Merrill, not the complaints filed in state court by Roosen, Web Equity, and Main Street.

**2.** In the complaint in state court, Web Equity stated that Washington, in applying for and obtaining credit, represented that she would repay the amounts used to make purchases when, in fact, she had no intention to pay all

Equity also alleged that its claim was based on a written instrument, and that the written instrument was in Washington's possession. (*Id.* ¶ 15.)

Mirroring the allegations based on the state suit brought against Washington, Plaintiffs allege, on September 8, 2010, Roosen, on behalf of Main Street, filed suit against Merrill in the 77th District Court in Big Rapids, Michigan. (*Id.* ¶ 17.) As the fifth cause of action in that lawsuit, Main Street stated that Merrill knowingly and intentionally made false statements as part of his application for a credit card.[3] (*Id.* ¶ 19.) Main Street also stated that its claim was based on a written instrument, and that Merrill was in possession of the written instrument. (*Id.* ¶ 21.)

Plaintiffs allege that the fraud or false representation statements and the written instrument statements are both false and made without any factual basis. (Compl. ¶¶ 14 and 22.) Plaintiffs allege that Roosen has filed hundreds of similar debt-collection suits in Michigan using a standardized form. (*Id.* ¶ 25.) Plaintiffs allege that Roosen includes the fraud or false representation claim in order to prevent the defendants from later discharging the debt through bankruptcy. (*Id.* ¶ 23.) Plaintiffs allege that Roosen includes the written instrument statement so that it does not have to obtain a copy of the underlying contract.[4] (*Id.* ¶ 24.)

Plaintiffs allege, because the state suits were an attempt to collect a debt, and because Defendants made false statements in those lawsuits, Defendants have violated the FDCPA, MCPA, and MOC. With regard to the FDCPA claims, the Complaint alleges the following violations:

38. Defendants violated the Fair Debt Collection Practices Act. Defendants' violations include, but are not limited to, the following:

a. By falsely representing that their claims are based on fraud, Defendants falsely represented the character and legal status of a debt, in violation of 15 U.S.C. § 1692e(2)(A).

b. By falsely representing that the persons they sue are guilty of fraud, defendants falsely represented that the consumers committed a crime or other dishonest conduct, in violation of 15 U.S.C. § 1692e(7).

c. By falsely representing that the persons they sue are guilty of fraud in attempt to deny those persons the right to discharge the debt in bankruptcy, defendants used a false representation to collect the debt in violation of 15 U.S.C. § 1692e(10).

d. Defendants' false representation that the persons they sue are in possession of the written instrument is a false representation or deceptive means to collect or attempt to collect the debt, in violation of 15 U.S.C. § 1692e(10).

e. Defendants' false allegations of fraud are an unfair or unconscionable means to collect or attempt to collect

---

or some of the amounts borrowed. (ECF No. 1–1 "Web Equity Compl." ¶ 28 PgID 19.)

**3.** In the complaint in state court, Main Street stated that Merrill, in obtaining credit, represented that he would repay the amounts used to make purchases when, in fact, he had no intention to pay all or some of the amounts borrowed. (ECF No. 1–2 "Main Street Compl." ¶ 28 PgID 28.)

**4.** The Michigan Court Rule, § 2.113(F)(1)(b), requires that, if a claim is based on a written instrument, a copy of the written instrument must be included in the pleadings, unless the written instrument is in the possession of the party being sued.

the debt, in violation of 15 U.S.C. § 1692f.

(Compl. ¶ 38.)

## WEB EQUITY'S MOTION (ECF No. 5)

Web Equity asserts the complaint fails to state a claim under the FDCPA and seeks dismissal of the federal claim against it under Fed.R.Civ.P. 12(b)(6).

## A. LEGAL FRAMEWORK FOR A RULE 12(b)(6) MOTION

Under the notice pleading requirements, a complaint must contain a short and plain statement of the claim showing how the pleader is entitled to relief. Fed.R.Civ.P. 8(a)(2). The complaint need not contain detailed factual allegations, but it must include more than labels, conclusions, and formulaic recitations of the elements of a cause of action. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must provide sufficient factual allegations that, if accepted as true, are sufficient to raise a right to relief above the speculative level, *Id.,* 550 U.S. at 555, 127 S.Ct. 1955, and the "claim to relief must be plausible on its face" *Id.* at 570, 127 S.Ct. 1955. "A claim is plausible on its face if the 'plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Ctr. for Bio–Ethical Reform, Inc. v. Napolitano,* 648 F.3d 365, 369 (6th Cir. 2011) (quoting *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citations omitted). When considering a

motion to dismiss, a court must accept as true all factual allegations, but need not accept any legal conclusions. *Ctr. for Bio–Ethical Reform.,* 648 F.3d at 369.

## B. DISCUSSION

■ Congress enacted the FDCPA to prohibit abusive debt collection practices by debt collectors. 15 U.S.C. § 1692(e). Because the problems with debt collectors were widespread, the statutory provisions have extraordinary breadth. *Miller v. Javitch, Block & Rathbone,* 561 F.3d 588, 592 (6th Cir.2009). Plaintiffs alleging a claim under 15 U.S.C. § 1692e must establish that (1) the plaintiff is a consumer, as defined by the FDCPA, (2) the debt arises out of a transaction primarily for personal, family or household purposes, (3) the defendant is a debt collector, as that phrase is defined by the FDCPA, and (4) the defendant violated one of the prohibitions listed in § 1692e. *Wallace v. Washington Mut. Bank, F.A.,* 683 F.3d 323, 326 (6th Cir.2012). Section 1692e prohibits debt collectors from using false or misleading statements in connection with the collection of a debt. In their complaint, Plaintiffs cite §§ 1692e(2)(A), (7), and (10) as the bases for their federal claims.[5]

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

\* \* \*

(2) The false representation of—

(A) the character, amount or legal status of any debt; or

\* \* \*

---

5. Plaintiff also cite 15 U.S.C. § 1692f. (Compl. ¶ 38e.) Web Equity does not address any potential claim under § 1692f.

(7) The false representation or implication that the consumer committed any crime or other conduct in order to disgrace the consumer.

\* \* \*

(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

15 U.S.C. § 1692e. Web Equity challenges the second and fourth elements. Web Equity does not challenge either the first or third elements. In other words, for the purpose of this motion, Web Equity has not challenged that Plaintiffs are consumers under the FDCPA or that it is a debt collector under the FDCPA.

Of importance here, Web Equity filed a motion to dismiss, not a motion for summary judgment. Some of the circuit opinions cited by the parties in their briefs and in this opinion involve appeals of motions for summary judgment. In order for those precedents to be applicable, the court would have had to decide the motion as a matter of law, rather than on the facts in the record. In order for Web Equity to prevail, it must show that the complaint fails to set forth a claim on which relief may be granted.

### 1. Are the Alleged False Statements in the State–Court Complaint Actionable?

█ Web Equity insists that the statements made in the state-court complaints are not actionable under the FDCPA. Web Equity is not entitled to dismissal of the claims on the basis that the allegedly actionable statements were made in a state-court pleading.

█ Attorneys are given "some leeway for the use of legal terms of art and other language that might be difficult for the

least sophisticated consumer to understand." *Miller*, 561 F.3d at 594. However, the leeway afforded to attorneys for the use of legal terms in a complaint is not a reason to dismiss the claims made here. Although the Complaint uses the word "fraud" in the caption introducing Claim 5, the allegations state only that Defendants made a false representation. (Compl. ¶¶ 29–30, 32.) The allegedly false representation is explained in some detail. (Compl. ¶ 28.) The guidance offered in *Miller* has little application to this case. In *Miller*, the complaint filed in state court characterized the credit-card debt as a loan. *Miller*, 561 F.3d at 592. The plaintiff argued that credit-card debt is technically not a loan, but a merchant's account receivable. *Id.* The Sixth Circuit Court of Appeals agreed with the legal conclusion of the district court, quoting the district court's opinion at length. *Id.* at 592–93. Citing a number of cases, and ultimately relying on Ohio law, the district court concluded that, as a matter of law, a credit-card issuer does not violate the FDCPA by filing an action in Ohio state courts for "money loaned." *Id.* at 593. Nothing in the complaint filed here arises to the sort of technical legal distinctions at issue in *Miller*.

█ The fact that the allegedly false statements were made in state court is not a reason to dismiss the claims filed here. In *Heintz v. Jenkins*, 514 U.S. 291, 299, 115 S.Ct. 1489, 131 L.Ed.2d 395 (1995), a unanimous Supreme Court held that the FDCPA applies "to attorneys who 'regularly' engage in consumer-debt-collection activity, even when that activity consists of litigation." Web Equity questions whether the FDCPA even applies to the content of state-court complaints, citing *Beler v. Blatt*, 480 F.3d 470, 473 (7th Cir.2007).[6] *Beler* is not binding on this Court.

---

**6.** In *Beler*, the court wrote "[l]et us suppose, for the sake of argument, that § 1692e applies to complaints, briefs, and other papers filed in

state court. (We postpone to some future case, where the answer matters, the decision

In *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 328, 333 (6th Cir.2006), the Sixth Circuit addressed whether a debt collector must possess immediate means of proving the existence, amount, and ownership of a debt at the time it files a lawsuit to collect the debt. Similar to the situation here, in *Harvey*, the debt collector filed a debt-collection suit in state court and was later sued by the consumer in federal court, on the theory that statements made in the state-court lawsuit violated the FDCPA. The court held that the filing of the lawsuit in state court, without possessing the documents necessary to prove the debt, did not constitute a deceptive practice under § 1692e(10). *Id.* at 333. The court reasoned that the state lawsuit was not deceptive because the consumer did not deny the existence of the debt, nor did she claim that the debt collector had misstated the amount owed. *Id.* at 332. On that basis, the federal suit against the debt collector failed to allege any false representation or deception that occurred in the state lawsuit. *Id.*

Pointing to Fed.R.Civ.P. 11, the court noted that the debt collectors did not "implicitly represent by filing the Complaint for Money that they had in hand the means to prove [the] claims." *Id.* at 333. As the court had already found, on the basis of the consumer's answer to the state-court action and the pleadings in federal court, that the statements in the state-court action were neither false nor deceptive, the Rule 11 finding was not necessary to the result. Furthermore, the court rules for pleadings in the state court, not Rule 11 of the Federal Rules of Civil Procedure, would have governed the allegations contained in the complaint filed in

state court. For these reasons, the Court does not read *Harvey* as exempting all statements made in state-court complaints from the prohibitions in the FDCPA.

In addition, since *Harvey*, the Sixth Circuit has reversed at least two district court decisions granting summary judgment for the defendants where the federal complaints alleged deceptive statements in the complaints filed in state court. *See Grden v. Leikin Ingber & Winters PC*, 643 F.3d 169, 172 (6th Cir.2011) (reversing a district court's decision to grant the defendant's motion for summary judgment and finding that a jury could find that a document filed in a state-court debt-collection action was misleading.); *Hartman v. Great Seneca Fin. Corp.*, 569 F.3d 606, 613, 617 (6th Cir.2009) (reversing a district court's decision to grant the defendant's motion for summary judgment and finding that there was a genuine issue of material fact whether an exhibit filed in the state-court action would mislead the least sophisticated consumer). In neither case did the court question the application of § 1692e to state-court litigation. Additionally, the Sixth Circuit found that the attorneys for a law firm who submitted an affidavit in a state-court debt collection action were not entitled, in a federal suit under the FDCPA, to absolute immunity as complaining witnesses. *Todd v. Weltman, Weinberg & Reis Co., LPA*, 434 F.3d 432, 439–47 (6th Cir.2006).

2. **Are the statements made in the state-court complaints material to the claims brought in federal court?**[7]

In order to be actionable under the FDCPA, the allegedly false or mislead-

---

whether § 1692e covers the process of litigation.)''

**7.** The materiality issue was raised as part of the first issue in Web Equity's brief. For convenience, the Court has separated the ma-

teriality issue from the broader question of whether a statement made in state court is actionable. Assuming a statement made in a complaint made in state court can be actionable, the statement must still be material in

ing statements made by a debt collector must be material to the plaintiff's federal claim.

Whether a debt collector's actions are false, deceptive, or misleading under § 1692e is based on whether the "least sophisticated consumer" would be misled by defendant's actions. *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 329 (6th Cir.2006). In addition, in applying this standard, we have also held that a statement must be *materially* false or misleading to violation Section 1692e. *See Miller v. Javitch, Block & Rathbone*, 561 F.3d 588, 596–97 (6th Cir.2009) (applying a materiality standard to a Section 1692e claim that was based on alleged misstatements in legal pleadings). The materiality standard simply means that in addition to being technically false, a statement would tend to mislead or confuse the reasonable unsophisticated consumer.

*Wallace*, 683 F.3d at 326–27 (emphasis in original).

### Written Instrument Statement

■ In the state-court complaint, Defendants (there the plaintiffs) alleged "[t]hat pursuant to MCR 2.113(F)(1)(b), one of Plaintiff's claims is based on a written instrument, the copy of which is not attached as it is in the possession of the adverse party." (ECF No. 1–1 "Washington Suit" ¶ 6 PgID 16; ECF No. 1–2 "Merrill Suit" ¶ 6 PgID 25.) In the federal complaint, Plaintiffs allege that the written instrument statements are false and, at the time made, were made without factual basis. (Compl. ¶¶ 16 and 22.) For the purpose of this motion, the Court must assume that the factual assertions in the Complaint are true. Therefore, this Court must assume that, at the time the state-court complaint was filed, neither Wash-

ington nor Merrill possessed copies of their credit-card agreements.

■ The "written instrument" statements in the state-court complaints are not material to Plaintiffs' federal claims. The Michigan Court Rule provides

(F) Exhibits; Written Instruments.

(1) If a claim or defense is based on a written instrument, a copy of the instrument or its pertinent parts must be attached to the pleading as an exhibit unless the instrument is

\* \* \*

(b) in the possession of the adverse party and the pleading so states;

Mich. Ct. R. 2.113(F)(1)(b). Although the statement in the state-court complaint may be false, there is nothing deceptive about it. A technical falsity that does not deceive or mislead will not be material and, therefore, will not be actionable. *Miller*, 561 F.3d at 596 (quoting *Hahn v. Triumph P'ships LLC*, 557 F.3d 755, 757 (7th Cir. 2009)). Neither party disputes that Washington and Merrill were issued credit cards subject to an agreement between them and the cards issuers. Washington and Merrill would know whether they had in their possession a copy of the credit-card agreement. Such knowledge hardly requires technical expertise or legal training. The least sophisticated consumer would not be mislead or deceived by the statement.

■ The conclusion that the written instrument statement is not material is reinforced by the state-court remedy for failing to attach the written instrument. The failure to attach the written instrument is a correctable deficiency in the pleading, not a deficiency in the merits of the claim. In Michigan, failing to attach the written instrument to the complaint results in dis-

order for it to give rise to a claim under the FDCPA.

missal without prejudice. *See English Gardens Condo., LLC v. Howell Twp.*, 273 Mich.App. 69, 729 N.W.2d 242, 250 (Mich. Ct.App.2007) *reversed in part on other grounds* 480 Mich. 962, 741 N.W.2d 511 (2007). This distinguishes the written instrument statement from situations where the communication with the consumer threatens legal action, even though the statute of limitations has already run and the debt collector could not prevail if it filed a lawsuit to collect the debt. *See Kimber v. Fed. Fin. Corp.*, 668 F.Supp. 1480, 1489 (M.D.Ala.1987). This also distinguishes the written instrument statement from situations where a statute prohibits attorney fees, even though the debt-collection suit could be interpreted as seeking attorney fees. *See Gionis v. Javitch, Block & Rathbone*, 238 Fed.Appx. 24, 28–30 (6th Cir.2007). Where statutes forbid the courses of action threatened in communications to consumers in *Kimber* and *Gionis*, no statute forbids a lawsuit where the debt-collector fails to attach the credit-card agreement to the complaint.

Finally, the Court finds the reasoning in *Lipa v. Asset Acceptance, LLC*, 572 F.Supp.2d 841 (E.D.Mich.2008) persuasive. In *Lipa*, like here, the federal lawsuit was based on claims made in a debt-collection lawsuit filed in state court. Like here, the debt collector did not attach a copy of the credit agreement to the state-court complaint. However, the Michigan Court Rule was not an issue in the *Lipa*. Instead, the debt collector attached a stale affidavit of account. The federal complaint raised issues under § 1692d, § 1692e(5), (10), and § 1692f. The debt collector filed a motion to dismiss the federal lawsuit. The district court interpreted the federal claim as one asserting that the debt collector lacked the means of proving its claim at the time the suit was filed. *Lipa*, 572 F.Supp.2d at 848. Relying in *Harvey*, the district court found that such a claim is not a violation of the FDCPA for which relief may be granted.

*Id.* at 849–50. Similar to *Lipa* and *Harvey*, the fact that the debt collector failed to attach the credit-card agreement to the complaint, and may not have possessed the credit-card agreement at the time the state-court complaint was filed, does not constitute a violation of the FDCPA.

### Fraud for False Representation Statement

 In the state-court complaint, Defendants (there the plaintiffs) alleged that the Plaintiffs (there the defendants) sought a line of credit with the intention not to pay for all or some of the amounts borrowed. (ECF No. 1–1 "Washington Suit" ¶ 28 PgID 19; ECF No. 1–2 "Merrill Suit" ¶ 28 PgID 28.) In the federal complaint, Plaintiffs allege that these statements are false and, at the time made, were made without factual basis. (Compl. ¶¶ 13–14 and 19–20.) Plaintiffs claim the fraud allegations in state-court complaints violate 15 U.S.C. § 1692e(2)(A), (7), (10), and § 1692f. (Compl. ¶ 38a, b, d, and e.)

The fraud claims against them in the state-court complaints are material to Plaintiffs' federal FDCPA claims. The fraud claim brought in state court would require more than proof of an agreement between the consumer and the credit-card issuer, making the claim distinguishable from the written instrument claim. Assuming the allegations in the federal complaint to be true, Defendants had no factual basis for claiming that Plaintiffs did not intend to repay the money spent using the credit cards. Such a claim would be deceiving and misleading to the least sophisticated consumer, who would view the claim as more serious than a claim based on a failure to pay.

At oral argument, the parties disputed whether the fraud claim was material based on the consequences of the fraud claim in bankruptcy. The Court finds this focus misplaced. The bankruptcy conse-

quences for a successful fraud claim do not fall within the scope of the materiality standard, as that standard was explained by the Sixth Circuit in *Miller* and *Wallace*. The question is not why the plaintiff pled a fraud claim, but whether the fraud claim was both false and misleading. If the claim made in state court was both false and misleading, then the claim meets the materiality standard for a claim under the FDCPA in federal court. In this federal lawsuit, Plaintiffs claim that Defendants lacked any factual basis whatsoever for asserting that Plaintiffs did not intend to pay the debt incurred by the credit card at the time they applied for the credit card. That allegation states a claim under the FDCPA.

### 3. Was the alleged violation of Michigan Court Rule 2.113(F) Directed at a Consumer?

Web Equity argues that the purpose of the state-court rule is for the benefit of the state court and therefore the alleged violation, the written instrument statement, is not directed at the consumer and would not alter the consumer's behavior.

According to the Complaint, Plaintiffs' claim arising from the "written instrument" statement is based on the prohibition in § 1692e(10). (Compl. ¶ 38d.) Section 1692e(10) prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."

Although the Court agrees that the claim based on the missing written instrument should be dismissed, the Court declines to adopt the rule urged by Web Equity here on this issue. Web Equity relies on *O'Rourke v. Palisades Acquisition XVI, LLC*, 635 F.3d 938 (7th Cir. 2011). The Seventh Circuit summarized the *O'Rourke* case in the opening paragraph. O'Rourke owed several thousand dollars on his credit card. The unpaid debt was sold to several debt collectors, eventually landing with Palisades. Palisades ultimately filed a debt collection action in state court. "Attached to the complaint was an exhibit that closely resembled a credit card statement listing the balance he owed and placing Palisades in the place of the issuer." *Id.* at 939. O'Rourke sued Palisades in federal court alleging a violation of the FDCPA.

> Unlike most lawsuits under the Act, he claimed that the attachment was actionable because it was meant to mislead the state court judge. The district court granted summary judgment for Palisades and O'Rourke appeals. The Act regulates communications directed at the consumer; since it does not extend to communications that are regularly meant to mislead the judge in a state court action, we affirm.

*Id.* Later in the opinion, the court held that the prohibitions in the FDCPA are "clearly limited to communications directed to the consumer and do not apply to state judges." *Id.* at 941. The court reasoned that although the text of § 1692e "says nothing of to whom the representation must be made for it to be actionable," "[t]here must be some limiting principle." *Id.* at 942. The court concluded "we read the Act's protections as extending to consumers and those who stand in the consumer's shoes and no others." *Id.* at 943–44.

The only other circuit court, the Eighth Circuit, to consider *O'Rourke* did not adopt the holding. *See Hemmingsen v. Messerli & Kramer*, 674 F.3d 814, 818–19 (8th Cir. 2012). In *Hemmingsen*, the plaintiff alleged that the defendant violated the FDCPA by making false statements and misrepresentations in a state-court action in a brief filed in support of a motion for summary judgment. 674 F.3d at 818. Ul-

timately, the Eighth Circuit affirmed the district court's decision to grant the debt collector's motion for summary judgment. In doing so, however, the Eighth Circuit was "unwilling to adopt the district court's broad ruling that false statements not made directly to a consumer debtor are never actionable under § 1692e." *Id.* The court then posited a hypothetical situation.

> To take an obvious example, a § 1692e complaint alleging that the defendant debt collector lawyer routinely files collection complaints containing allegedly false assertions of the amount owed, serves the complaints on unrepresented consumers, and then dismisses any complaint that is not defaulted would raise far different issues of abusive, deceptive, or unfair means of debt collection than this case.

*Id.* The court found that the *Heintz* decision was carefully crafted by the Supreme Court and "counsels against anything other than a case-by-case approach, at least in this, our first case requiring us to address these issues."[8] *Id.* at 819. Discussing the facts, the court found "no difficulty" dismissing the FDCPA claim on the merits. *Id.*

> It was not false or misleading to submit a client affidavit and legal memorandum arguing M & K's legal position that Ms. Hemmingsen was liable for an unpaid account balance, even if George was the only one who used the credit card and made partial payments on the account, when Discover's records reflected that George submitted the initial application, added Ms. Hemmingsen to the account by phone, neither spouse questioned statements identifying it as a joint account, partial payments were made by check from a joint account, and a Mari-

tal Termination Agreement signed by Ms. Hemmingsen listed it as a joint obligation from the couple's "living expenses." The fact that the state court judge rejected the contention, unaware that Ms. Hemmingsen had personally made at least one payment on the account, does not prove that those assertions were false or misleading for the purpose of § 1692e. Nor has Ms. Hemmingsen produced any evidence showing that the state court judge—or anyone else—"was misled, deceived, or otherwise duped" by M & K's pleadings. *O'Rourke*, 635 F.3d at 945 (Tinder, J. concurring).

*Id.*

Obviously, *O'Rourke* is not binding on this Court. Of more importance, the claim in *O'Rourke* is not the same claim made here. In contrast to the situation in *O'Rourke*, Plaintiffs are not alleging that the written instrument statement was misleading to the state-court judge. Rather, Plaintiffs are alleging that the statements were intended to mislead or deceive the consumer.

The Court also finds Plaintiffs' authority on this issue, *Hartman v. Great Seneca Fin. Corp.*, 569 F.3d 606 (6th Cir.2009), inapplicable. In *Hartman*, the state-court plaintiffs attached a document to the complaint that they alleged was a copy of the consumer's account. Although the document resembled a credit-card statement, the documents had been generated on Great Seneca's behalf and were not actual copies of the credit-card accounts acquired by Great Seneca. The Sixth Circuit concluded there was a question of material fact whether the document would be deceiving or misleading to the least sophisti-

---

**8.** Although *O'Rourke* involved a motion for summary judgment, the issue was resolved based on text of the FDCPA, and did not rely on the facts in the record. Relying on the

holding in *Heintz*, the Eighth Circuit concluded that the issue must be resolved based on the facts of each case.

cated consumer. *Hartman,* 569 F.3d at 613. Here, no deceptive document was attached to the state-court complaint.

### 4. Did the Allegations in the State-Court Complaint Disgrace the Plaintiffs?

Web Equity argues "Plaintiffs have not alleged, nor can they prove, that the fraud claims were pled 'in order to disgrace the consumer.'" (Web Equity Br. 8.) Section 1692e(7) prohibits the "false representation or implication that the consumer committed any crime or other conduct in order to disgrace the consumer."

■■■ Web Equity is entitled to dismissal of Plaintiff's claims brought under § 1692e(7). Plaintiffs' brief fails to respond to Web Equity's argument. In fact, Plaintiffs' brief does not mention its claim under subsection (7). Failing to respond to arguments properly raised in a motion to dismiss constitutes abandonment of that position.[9] *See Alioto v. Town of Lisbon,* 651 F.3d 715, 721 (7th Cir.2011) (citations omitted). *Accord, C & L Ward Bros., Co. v. Outsource Solutions, Inc.,* No. 11-cv14773, 2012 WL 3157005, at *4 n. 1 (E.D.Mich. Aug. 3, 2012) (Steeh, J.) ("Plaintiff has abandoned its RICO claims 18 U.S.C. §§ 1692(a) and (b) as it offers no response to defendant's argument that plaintiff has failed to state a claim under RICO sections 1692(a) and (b)."); *Mekani v. Homecomings Fin. LLC,* 752 F.Supp.2d 785, 790 n. 2 (E.D.Mich.2010) (Borman, J.) ("In any event, Plaintiff has not responded to Defendant's motion to dismiss this claim, and the Court assumes he concedes this point and abandons the claim.").

### 5. Was the Fraud Claim an Effort To Collect a Debt?

Web Equity argues the fraud claim in the state-court complaint was not an attempt to collect a debt. The FDCPA defines "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, ... or services which are the subject of the transaction are primarily for personal, family, or household purpose, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5). Web Equity refers the Court to several circuit court opinions holding that obligations to pay damages arising from torts do not constitute a debt under the FDCPA. *See Hawthorne v. Mac Adjustment, Inc.,* 140 F.3d 1367, 1371 (11th Cir.1998) (holding the obligation to pay arose from a tort, and not from a consumer transaction, and therefore was not a debt under the FDCPA); *Beggs v. Rossi,* 145 F.3d 511, 512 (2d Cir.1998) (per curiam) (holding that personal property taxes levied by the local authorities did not constitute a debt because the obligation to pay did not arise from the rendition of a service or the purchase of an item of value); *Mabe v. G.C. Servs. Ltd. P'ship,* 32 F.3d 86, 88 (4th Cir.1994) (holding that child support payments that arose from an administrative support order issued by the Virginia Department of Social Services was not an obligation arising from a transaction involving money, property, insurance or services used primarily for household purposes and therefore not a debt under the FDCPA); *Zimmerman v. HBO Affiliate Grp.,* 834 F.2d 1163, 1167-69 (3d Cir.1987) (holding that a demand for payment made contemporaneous with an accu-

---

**9.** To the extent that some tangential portion of Plaintiffs' brief may be interpreted as addressing Defendant's subsection (7) claim, the response is insufficiently developed and is deemed waived. *See Barany–Snyder v. Weiner,* 539 F.3d 327, 331 (6th Cir.2008) ("This

cursory argument has been waived, for '[i]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.'" (quoting *McPherson v. Kelsey,* 125 F.3d 989, 995-96 (6th Cir.1997)).

sation that the individual has illegally received microwave television signals was not an attempt to collect a debt under the FDCPA because neither the complaint nor the demand letter included any assertion of an offer or extension of credit and therefore no transaction occurred). Web Equity also argues that, as pled in the complaint, the purpose of the fraud claim was to secure special standing in a possible bankruptcy case.

Web Equity is not entitled to dismissal of Plaintiffs' claims on the basis that Web Equity pled a tort in the state-court action. Section 1692e(10) regulates not just collection of debts, but also attempts to collect debts. It cannot be disputed that the state-court lawsuits were an attempt to collect a debt. The Court finds persuasive the reasoning employed and conclusions reached by the Third Circuit in *FTC v. Check Investors, Inc.*, 502 F.3d 159 (3d Cir.2007). In *FTC*, the debt collector attempting to collect on bounced checks made an argument similar to that advanced by Defendants here. As explained in the opinion, the defendant Check Investors operated under the theory that by collecting debts owed only on bounced checks, Check Investors would not be subject to the FDCPA. *Id.* at 162–63. Check Investors would accuse debtors of being a criminal and threaten them with criminal or civil litigation. *Id.* at 163. Nevertheless, the Federal Trade Commission filed suit against Check Investors, including charges for violating the FDCPA. Check Investors argued that the bounced checks were not debts under the FDCPA because all 50 states criminalized the act of writing a check knowing that the check would be dishonored. Check Investors also argued that a bounced check gives rise to tort liability. The Third Circuit rejected this line of argument. *Id.* at 168. The Third Circuit noted that "[f]our Courts of Appeals have rejected this argument[ ] and held that payment with a NSF check cre-

ates a 'debt' as defined in the FDCPA." *Id.* The same reasoning in the bounced check cases applies to this case. Even though some debtors may have intended to commit fraud, either by writing a check with insufficient funds or by taking a line of credit with the intention of not paying back the creditor, Congress concluded that these would not be the majority of the cases and refused to create an exception in the FDCPA for fraud. *See id.* at 170 (quoting *Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C.*, 111 F.3d 1322, 1330 (7th Cir.1997)). The court concluded, "given the legislative history of the FDCPA, its structure and text, we could not craft the kind of fraud exception that underlies the arguments of Check Investors without amending the statute." *Id.* at 170–71; *see Keele v. Wexler*, 149 F.3d 589, 595–96 (7th Cir.1998) (rejecting the argument that bounced checks do not constitute a debt under the FDCPA and putting "to rest any lingering doubts as to the nonexistence of a fraud exception to the FDCPA."). Although Web Equity pled a fraud claim in the state-court complaint, the facts on which that fraud claim is based are an attempt to collect a consumer debt.

### ROOSEN'S MOTION TO DISMISS (ECF No. 6)

Roosen brings its motion under Fed. R.Civ.P. 12(b)(3) and (b)(6). Roosen first argues that Merrill's credit agreement contains an arbitration provision and requests that Merrill's complaint be dismissed in favor of arbitration. Roosen argues, in the alternative, that the complaint fails to state a cause of action, repeating the arguments made by Web Equity.

### A. Under What Subsection of Rule 12 Should Roosen's Arbitration Claim Be Considered?

Roosen argues that the portion of his motion to dismiss on the basis of an

arbitration clause should be considered under Rule 12(b)(3), which authorizes a court to dismiss a claim on the basis of improper venue. Roosen argues the majority of circuit courts have concluded that motions to dismiss based on forum selection clauses should be brought under Rule 12(b)(3).

■ The Federal Rules of Civil Procedure govern proceedings brought under Title 9 of the United States Code, relating to arbitration. Fed.R.Civ.P. 81(a)(6)(B). Rule 12(b)(3) authorizes a motion on the basis of "improper venue." "However, a Rule 12(b)(3) motion to dismiss for improper venue is simply the procedural vehicle by which to challenge improper venue; the Rules of Civil Procedure do not contain any venue provisions or requirements. The requirements for venue are set by statute, as are the remedies available for improper and inconvenient venue." *Kerobo v. Southwestern Clean Fuels Corp.*, 285 F.3d 531, 538 (6th Cir.2002). Congress has set forth the venue requirements for suits filed in federal court. *See* 28 U.S.C. § 1391. Congress has also set forth the requirements for changing the venue of suits filed in federal court. *See* 28 U.S.C. § 1404. The Sixth Circuit has held that "a forum selection clause should not be enforced through dismissal for improper venue under FRCP 12(b)(3) because these clauses do not deprive the court of proper venue." *Wong v. PartyGaming, Ltd.*, 589 F.3d 821, 830 (6th Cir.2009) (citing *Kerobo*, 285 F.3d at 535). Where the defendant seeks to enforce a forum-selection clause in a contract, the Sixth Circuit has indicated that a motion should be brought under Rule 12(b)(6) to dismiss the action or under § 1404(a) to transfer venue. *See Langley v. Prudential Mortg. Capital Co., LLC*, 546 F.3d 365, 369 (6th Cir.2008) (per curiam).

Although the Sixth Circuit has not clarified the proper vehicle for bringing a motion to dismiss on the basis of an arbitration clause, *see Security Watch, Inc. v. Sentinel Sys., Inc.*, 176 F.3d 369, 371 n. 2 (6th Cir.1999), this Court has previously held that such motions to dismiss are properly brought under Rule 12(b)(6). *See HRL Land or Sea Yachts v. Travel Supreme, Inc.*, No. 1:07–cv945, 2009 WL 125845, at *3 (W.D.Mich. Jan. 16, 2009) (Maloney, C.J.) (citing *High v. Capital Senior Living Props. 2–Heatherwood, Inc.*, 594 F.Supp.2d 789, 795 (E.D.Mich.2008) and *Moore v. Ferrellgas, Inc.*, 533 F.Supp.2d 740, 744 (W.D.Mich.2008)). Notably, neither *Kerobo* nor *Wong* involved an arbitration clause.

Roosen's authority does not require a different conclusion. Roosen argues that "most federal courts of appeals consider a motion to dismiss based on a contractual arbitration clause as an objection to venue and hence properly raised under Rule 12(b)(3)" and citing, as examples, *Auto. Mechs. Local 701 Welfare and Pension Funds v. Vanguard Car Rental USA, Inc.*, 502 F.3d 740, 746 (7th Cir.2007) and *Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285, 1290 (11th Cir.1998). (Roosen Br. 4.) First, neither *Automobile Mechanics* nor *Lipcon v. Underwriters* is binding on this court, while *Kerobo* and *Wong* are binding. Under Sixth Circuit precedent, forum-selection clauses, which are contract issues, are not properly enforced as venue motions, which are governed by statute. Second, the authority on which *Automobile Mechanics* and *Lipcon v. Underwriters* rely recognizes that the Sixth Circuit has reached a different conclusion. *Automobile Mechanics* and *Lipcon v. Underwriters* both cite 5b Charles A Wright and Arthur R. Miller, *Federal Practice and Procedure*, § 1352. *Auto. Mechs.*, 502 F.3d at 746; *Lipcon v. Underwriters*, 148 F.3d at 1289. Wright and Miller recognize that a circuit split exists on the issue of "whether dismissal of the action is proper pursuant to Rule

12(b)(3) or Rule 12(b)(6) when it is based on one of these forum selection clauses rather than on noncompliance with a federal venue statute; . . . ." Wright and Miller, § 1352 at 318–19. In the relevant footnote, Wright and Miller cite *Kerobo* for the Sixth Circuit's holding on the issue. *Id.* at 319 n. 5 Third, the word "venue" has a specific meaning in the relevant statute, which undermines the application of Rule 12(b)(3) to arbitration clauses. "Venue" is a place and, under 28 U.S.C. § 1391, venue refers to a "judicial district." Federal judicial districts are places defined by specific geographic boundaries. Arbitration clauses, unlike forum selection clauses, do not always select a geographic location for the arbitration to occur. When parties agree to arbitration, as an alternative to court action, the parties have not necessarily agreed to a specific venue, judicial district, or geographic location. By agreeing to arbitration, the parties are agreeing to an alternative means of resolving the dispute, not necessarily an alternative geographic location. Certainly, some arbitration clauses will also contain forum-selection clauses.

## B. Should This Court Consider the Credit Card Agreement Attached to Roosen's Motion?

■ Ordinarily, when considering a motion brought under Rule 12(b)(6), the court considers only whether the facts alleged in the pleadings, taken as true, state a claim upon which relief may be granted. If matters outside the pleadings are presented as part of a Rule 12(b)(6) motion, the court must either exclude the matters or treat the motion as one brought under Rule 56. Fed. R. Civ. P 12(d). A court may consider matters outside the pleadings, but only under limited circumstances. A court may consider, as part of a Rule 12(b)(6) motion, "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint," as well as "documents that a de-

fendant attaches to a motion to dismiss . . . if they are referred to in the plaintiff's complaint and are central to her claim." *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir.2001). If the court opts to treat the motion as one for summary judgment, the parties must be given a reasonable opportunity to present all the material pertinent to the motion. Fed.R.Civ.P. 12(d).

■ The credit-card agreement attached as an exhibit to Roosen's motion (ECF No. 6–5 Ex. D) is not a matter this Court may consider as part of a Rule 12(b)(6) motion. The exhibit is not a public record, a court order, or an item appearing in the record of the case. The exhibit was not attached to the federal complaint. The credit card agreement is not referred to in the federal complaint. Although the credit card agreement may have been central to the complaint in state court, it is not central to the complaint here in federal court, which arises from the statements made in the state-court complaint. Although Roosen alleges the credit-card agreement was sent to Plaintiffs as part of discovery in the state-court action, Roosen neglected to attach any documentation to its reply brief to support that allegation.

■ This Court will not treat the Rule 12(b)(6) motion as a motion under Rule 56. This Court has not given the parties notice that the motion would be treated as a motion for summary judgment. Even if this Court were to treat the motion as one for summary judgment, the credit-card agreement, as presented, would not be considered. Before a court may consider evidence in a motion for summary judgment, the evidence must be admissible at trial. *See Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir.2009). In opposing a motion for summary judgment, however, the evidence need not be submitted in a form that is admissible at

trial. *Id.* (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)); *Alpert v. United States,* 481 F.3d 404, 409 (6th Cir.2007) (citing *U.S. Structures, Inc. v. J.P. Structures, Inc.,* 130 F.3d 1185, 1189 (6th Cir.1997)). On a motion for summary judgment, a district court should not consider documents that are not authenticated. *Magnum Towing & Recovery v. City of Toledo,* 287 Fed. Appx. 442, 448 (6th Cir.2008) (citations omitted); *see Alexander,* 576 F.3d at 558 (explaining the court's "repeated emphasis that unauthenticated documents do not meet the requirements of Rule 56(e)."). Plaintiffs, here the nonmoving party, have raised the question of authenticity and admissibility in their response. *See* Fed. R.Civ.P. 56(c)(2); *Moore v. Holbrook,* 2 F.3d 697, 699 (6th Cir.1993).

The credit-card agreement attached to Roosen's motion, as presented, lacks all indicators that it could be admissible at trial. The document has not been authenticated. *See, e.g., Louisville Chapter Nat'l Elec. Contractors Assoc. v. Lord Elec. Co., Inc.,* 816 F.2d 680 (6th Cir.1987) (unpublished table opinion) (per curiam) ("The document was introduced as an attachment to Louisville NECA's memorandum in support of its motion for summary judgment. It was not, however, accompanied by an affidavit or otherwise authenticated. It is therefore not properly before this Court."). No affidavit has been submitted vouching for the credit-card agreement. The document is mostly illegible. There is no evidence that, if Merrill did use a credit card to accumulate the debt, that this agreement was for the card Merrill used.

## CONCLUSION

The two motions to dismiss are GRANTED IN PART and DENIED IN PART. Defendant Roosen's motion to dismiss (ECF No. 6) is DENIED as to the request to treat the motion as one brought under Fed.R.Civ.P. 12(b)(3). For this motion,

this Court will not consider the credit-card agreement attached to Roosen's motion. Therefore, Roosen's motion is also DENIED with respect to the request to force Merrill to arbitrate his claims. Both motions to dismiss (ECF Nos. 5 and 6) are GRANTED with respect to Plaintiffs' claims based on the written statement allegations in the state-court complaints. Both motions to dismiss are also GRANTED with respect to Plaintiffs' claims brought under § 1692e(7), based on the false representations statements in the state-court complaints. Both motions to dismiss are DENIED as to all other claims.

## *ORDER*

Consistent with the accompanying Opinion, it is hereby **ORDERED** as follows:

1. Defendant Web Equity's motion to dismiss (ECF No. 5) and Defendant Roosen's motion to dismiss (ECF No. 6) are **GRANTED IN PART and DENIED IN PART.** The motions are **GRANTED** with respect to Plaintiffs' claims identified in paragraph 38b and 38d of the complaint, those being Plaintiffs' claims brought under § 1692e(7) and Plaintiffs' claim brought under § 1692e(10) based on the written instrument statements in the state-court complaints. The motions to dismiss are **DENIED** as to all other arguments against the claims in the Complaint.

2. Defendant Roosen's motion to dismiss (ECF No. 6) is further **DENIED** with respect to the request to treat the motion as one brought under Fed.R.Civ.P. 12(b)(3). The motion is treated as one brought under Fed.R.Civ.P. 12(b)(6) and the Court will not consider the credit-card agreement attached to the motion. The motion is **DENIED** as to the request to

require Merrill to submit his claims to arbitration.